UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAKE R.,<br><br>                                      Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>                                      Defendant. | Case No.:  3:20-cv-01759-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW AND REMANDING FOR IMMEDIATE AWARD OF BENEFITS**<br><br>**[ECF No. 22]** |

On November 29, 2021, Blake Rudden ("Plaintiff") and Kilolo Kijakazi (Acting Commissioner of Social Security) ("Commissioner") filed a Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security ("Joint Motion") pursuant to 42 U.S.C. § 405(g), regarding Plaintiff's request for judicial review of a decision by the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. ECF No. 22.

After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court **REVERSES** the Commissioner's denial of disability insurance benefits and **REMANDS** for the calculation and award of benefits.

\\

\\

1

## I.   PROCEDURAL BACKGROUND

On July 2, 2018, Plaintiff filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning November 1, 2016 based on the alleged impairments of major depressive disorder, anxiety, and autism spectrum disorder. *See* Certified Administrative Record ("AR") 62, 188-89, ECF No. 17. Plaintiff also filed a Title XVI application for supplemental social security income ("SSI") on July 31, 2018. AR 190-212. Plaintiff's applications were denied on September 4, 2018. AR 61-87. His applications were denied again upon reconsideration on November 23, 2018. AR 88-121. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on November 28, 2018, and the hearing was held before the ALJ on January 17, 2020. AR 141-42, 30-60.

On February 4, 2020, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act, and accordingly denying disability insurance benefits. AR 15-25. The Appeals Council affirmed the ALJ's decision, (AR 1-3), making the ALJ's opinion the final decision of the Commissioner. *See* 42 U.S.C. § 405(h). On September 8, 2020, Plaintiff timely commenced this appeal seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1.

## II.   SUMMARY OF ALJ'S FINDINGS

The ALJ determined that Plaintiff had sufficient quarters of coverage for the purpose of his disability claim to remain insured through September 30, 2021. AR 15. Thereafter the ALJ performed the required five-step sequential evaluation process under the Social Security Act: (1) whether the claimant is involved in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that is "severe;" (3) whether the claimant's impairments meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (4) whether the claimant can still perform his past relevant work given his residual functional capacity ("RFC") despite his impairment(s); and (5) if the claimant cannot perform past relevant work, whether the

claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4).[1]

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 1, 2016, which is the alleged onset date of Plaintiff's disability. AR 17. At step two, the ALJ found that Plaintiff has the following severe impairments, i.e., impairments that significantly limit Plaintiff's ability to perform basic work activities: major depressive disorder, generalized anxiety disorder, autism spectrum disorder, Asperger syndrome, and dysthymic disorder. AR 17-18.

When evaluating medically determinable mental impairments, the ALJ must apply a special psychiatric review technique requiring the ALJ to rate a claimant's degree of functional limitation in four broad functional areas: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintain pace, and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(b)-(c). These four broad areas of functioning are also sometimes called the "paragraph B criteria," because they are also set forth under paragraph B of the Listings of mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part-A2, 12.00F (explaining how the Agency uses the paragraph B criteria to evaluate a claimant's mental disorder(s)). After rating the degree of functional limitation in each of these areas, the ALJ then determines whether the impairments are severe and whether they meet or are equivalent to the severity of any mental disorder in the Listings. 20 C.F.R. § 404.1520(d). If a claimant has at least one extreme limitation or two marked limitations in any area of mental functioning under Paragraph B, the criteria to meet a Listing are satisfied and the claimant should be found disabled at step three. The

---

[1] The Social Security Administration has promulgated separate but identical regulations governing claims for disability insurance benefits under Title II of the Social Security Act and claims for SSI under Title XVI. For the sake of simplicity, the Court cites to the regulations governing Title II disability insurance benefits at 20 C.F.R. §§ 404.1 *et seq.* throughout this opinion. The parallel regulations governing Plaintiff's SSI claims can be found at 20 C.F.R. §§ 416.101 *et seq.*

ALJ must also document that he applied this technique by incorporating the pertinent findings and conclusions based on the technique into his written decision, including specific findings as to the degree of limitation in each of the four functional areas. 20 C.F.R. § 404.1520(e).

Applying this technique, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the impairments in the Listings. AR 18. The ALJ found that Plaintiff has a moderate limitation in understanding, remembering, or applying information. AR 18. The ALJ also found that Plaintiff has a moderate limitation in interacting with others and in concentrating, persisting, or maintaining pace. AR 18. The ALJ noted that despite these limitations, Plaintiff is able to drive, pay bills, and is capable of understanding and following simple instructions. AR 18. The ALJ found that Plaintiff has a mild limitation with respect to adapting or managing himself. AR 18. The ALJ determined that because Plaintiff does not have at least two marked limitations, or one extreme limitation, the paragraph B criteria of Listings 12.04, 12.06, 12.08, and 12.15 were not satisfied and thus found that the severity of Plaintiff's medically determinable mental impairments did not meet or medically equal a Listing. AR 19.

Before proceeding to step four, the ALJ addressed Plaintiff's RFC. A claimant's RFC is "the most [a claimant] can still do despite [his] limitations," and is based on all relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). The ALJ determined that Plaintiff has the RFC "to perform a range of work at all exertional levels but with the following nonexertional limitations: understand, remember and carry out simple, routine tasks, with no interaction with the general public and only occasional work-related, non-personal, non-social interaction with coworkers and supervisors," and that Plaintiff is able "to perform jobs requiring only simple work-related decisions." AR 19.

At step four, the ALJ determined that Plaintiff is unable to perform his past relevant work as a cashier checker. AR 24. As a result, the burden shifted to the ALJ at step five to

determine whether Plaintiff could perform any other work considering his RFC, capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). To meet that burden, the ALJ was required to establish that Plaintiff could perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c). Based on the testimony of the Vocational Expert ("VE") and Plaintiff's RFC, the ALJ concluded at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, including the jobs of hand packager and dishwasher. AR 25. Consequently, the ALJ found Plaintiff not disabled.

The issue presented by Plaintiff for appeal is whether the RFC is supported by substantial evidence.[2]

Plaintiff argues that substantial evidence does not support the ALJ's RFC assessment, because the ALJ incorporated functional limitations that were more restrictive than those suggested by the non-examining state agency psychological consultants Dr. Mark Dilger and Peter Bradley, Ph.D., but that were less restrictive than those suggested by psychiatric consultative examiner Dr. Jaga Nath Glassman and Plaintiff's treating psychiatrist, Dr. Hy V. Phan. *See* AR 22-23, 70, 100, 415-23. Thus, Plaintiff argues "the record does not contain any medical source statement that supports the ALJ's mental residual functional capacity." ECF No. 22 at 7. Plaintiff further argues that the RFC assessment is not supported by Plaintiff's testimony or by the objective medical evidence of record, and that the ALJ is "not qualified to interpret raw medical data in functional terms." *Id.* at 7-8 (quoting *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008)) (other citations omitted). Plaintiff also contends the ALJ mischaracterized record evidence in order to find Dr. Glassman's and Dr. Phan's opinions unpersuasive and to discredit

---

[2] The Joint Motion also presented the issue of whether remand is required because the relevant agency decisions with respect to Plaintiff's application were made during the tenure of Andrew Saul as Acting Commissioner of the Social Security Administration. Plaintiff withdrew this issue on May 26, 2022. ECF No. 24.

Plaintiff's subjective statements regarding the intensity, persistence, and severity of his symptoms. *Id.* at 8-13.

Defendant argues that the ALJ properly synthesized the evidence, including the medical opinions, in crafting Plaintiff's "highly restrictive RFC[.]" *Id.* at 22-23. Defendant contends that substantial evidence supports the conclusions drawn by the ALJ regarding the medical opinions, medical findings, the longitudinal record of Plaintiff's mental status examinations, Plaintiff's activities of daily living, and other evidence of Plaintiff's residual functioning, and that Plaintiff's reliance on "isolated excerpts of evidence from the record" does not suffice to warrant reversal. *Id.* at 23-25.

## III.   <u>STANDARD OF REVIEW</u>

The Court's role is to determine whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). If so, the Court must affirm.

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). In evaluating whether the Commissioner's decision is supported by substantial evidence on appeal, the Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, as well as resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014).

Even if the decision was based on legal error, however, a court may not reverse an ALJ's decision if the error is harmless. Harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

With respect to the ALJ's consideration of medical opinion evidence, the Social Security Administration's revised regulations for considering medical opinions and prior administrative findings, found at 20 C.F.R. § 404.1520c(c)(1)-(c)(5), apply because Plaintiff applied for disability after March 27, 2017. AR 188-89 (filed on July 2, 2018). The Ninth Circuit has recognized that these new regulations upend the longstanding treating physician rule. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Rather than attributing deference to a medical opinion based on the nature of the relationship between the physician and the claimant, an ALJ must evaluate the "persuasiveness" of any medical opinions. *Id.* at 792.

In evaluating persuasiveness, an ALJ must consider the medical source opinion's supportability, its consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence, social security requirements, and whether there was subsequently submitted evidence. *Id.*; 20 C.F.R. § 404.1520c(c)(1)-(c)(5). Though an ALJ may discuss each of the factors to be considered in his opinion, the regulations only require the ALJ to explain how he considered the most important factors – supportability and consistency – when determining a medical source's persuasiveness, unless two conflicting medical sources are both equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)-(3). An ALJ must explain his analysis of a medical opinion as persuasive or not persuasive. *Woods*, 32 F. 4th at 792 ("The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings.") (quoting 20 C.F.R. § 404.1520c(b)).

## IV.    THE RFC IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The ALJ determined the following RFC for Plaintiff:

[C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: understand, remember and carry out simple, routine tasks, with no interaction with the general public and only occasional work-related, non-personal, non-social interaction with coworkers and supervisors. He is able to perform jobs requiring only simple work-related decisions.

AR 19. In discussing the basis for this RFC, the ALJ stated that he had considered all of Plaintiff's symptoms and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence, the medical opinions of record, and the prior administrative medical findings of the state agency examiners, in accordance with 20 C.F.R. §§ 404.1529 and 404.1520c. The Court will address the ALJ's consideration of each of these sources of evidence in turn.

First, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 20. To support this conclusion, the ALJ summarized treatment notes from Dr. Nushin Sherkat, a family practice physician who treated Plaintiff in 2017 for depression and anxiety. AR 20, 299. The ALJ found that Dr. Sherkat's treatment notes reflect that Plaintiff was not compliant with his medication. AR 20, 299.

The ALJ then summarized treatment notes from psychiatry consultations at Operation Samahan and County of San Diego Mental Health in 2018 and 2019. AR 21. These notes indicate severe depression, anxious mood, and fatigue. AR 21, 343, 382. The notes reflect that Plaintiff was well-groomed, neatly dressed, and cooperative. AR 21, 343, 366, 382. The ALJ read these treatment notes as stating that Plaintiff was not compliant with his medication. AR 21. The ALJ noted six-month and nine-month gaps in Plaintiff's treatment history in 2017 and 2018. AR 22.

Later in the opinion, the ALJ also discussed Plaintiff's activities of daily living and

stated that they "were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 23. Specifically, the ALJ noted that Plaintiff did not report any difficulty with personal care, goes outside when needed, is able to drive, is able to pay bills (although he does not handle finances due to lack of income), worked as a pet sitter, went on a road trip with friends in April 2019, and lived in San Francisco for three months from June to August 2019, making up to $1,000 per month by dog walking and managing his own earnings. AR 23. The ALJ further stated that there was evidence that Plaintiff stopped working for reasons unrelated to his impairments because he lost his job at Staples due to misuse of store credit coupons, and not due to performance. AR 23-24. The ALJ concluded from this evidence that Plaintiff had a greater sustained capacity than he alleges. AR 24.

Second, the ALJ considered the medical opinions in the record. The ALJ discussed the medical opinion of Dr. Jaga Nath Glassman, a psychiatric consultative examiner. AR 22. Dr. Glassman opined that Plaintiff has no limitations in his ability to understand remember, and carry out simple instructions, and to make judgments on simple work-related decisions. Dr. Glassman assessed moderate limitations in Plaintiff's ability to understand, remember, and carry out complex instructions, to make judgments on complex work-related decisions, and to respond appropriately to usual work situations and to changes in a routine work setting. Dr. Glassman found marked limitations in Plaintiff's ability to interact appropriately with the public, supervisors, or coworkers. AR 415-16.

The ALJ found that "Dr. Glassman's opinion that the claimant is able to understand and follow simple instructions is consistent with and supported by the record." AR 22. The ALJ determined, however, that the rest of Dr. Glassman's opinion was not consistent with or supported by the record. AR 22. According to the ALJ, Dr. Glassman's findings that Plaintiff had marked limitation in social functioning were not consistent with evidence in the record that Plaintiff was "generally cleanly and casually dressed with good hygiene." AR 22. Similarly, the ALJ stated that Dr. Glassman's notes of poor eye contact were not consistent with record evidence that Plaintiff was "generally cooperative and pleasant with

9

normal speech." AR 22. The ALJ also pointed to the fact that Plaintiff has friends and "had a girlfriend at one point" to find that Dr. Glassman's assessment of a marked limitation in social functioning was not consistent with the record. AR 22.

The ALJ further found that Dr. Glassman's opinion that Plaintiff had a marked limitation in concentration, persistence, and pace, was inconsistent with the record. Specifically, the ALJ found that this degree of limitation was inconsistent with other portions of the record showing that Plaintiff was "alert and oriented," Plaintiff's cognitive abilities, and the fact that Plaintiff drove to San Francisco and lived there by himself for three months working as a dog walker and managing his own funds. AR 22-23. For those reasons, the ALJ found that Dr. Glassman's opinion was not persuasive. AR 23.

The ALJ also found that the medical opinion of Plaintiff's treating psychiatrist, Dr. Phan, was not persuasive. AR 23. Dr. Phan opined in June 2018 that Plaintiff has "moderate restrictions in activities of daily living, marked limitations maintaining concentration, persistence or pace, and extreme limitation maintaining social functioning." AR 23. The ALJ found that this opinion was not consistent with or supported by the record for the same reasons as Dr. Glassman's opinion – evidence in the record that Plaintiff had good hygiene, was cooperative, performed well in skills testing, had a girlfriend at some point, and had lived in San Francisco independently for three months. AR 23.

Third, the ALJ considered the prior administrative medical findings, i.e., the medical opinions of the non-examining state agency psychological consultants Dr. Dilger and Dr. Bradley, who denied Plaintiff's SSI and DIB applications at the initial and reconsideration levels of agency review, respectively. AR 72, 85, 102, 118. The ALJ found Dr. Dilger's and Dr Bradley's opinions to be somewhat persuasive. Dr. Dilger opined that Plaintiff had only mild limitations in the paragraph B criteria of understanding, remembering, or applying information and adapting or managing oneself, and moderate limitations in the areas of interacting with others and concentrating, persisting, or maintaining pace. AR 66, 79. At the reconsideration level, Dr. Bradley reviewed the entire file, found that Dr. Dilger's proposed RFC at the initial consideration level was

"convincingly supported by the [medical evidence of record]," and thus affirmed Dr. Dilger's findings, including the opinions regarding the degree of Plaintiff's limitations under the paragraph B criteria. AR 96, 100, 110, 116. Both consultants found that Plaintiff could perform semiskilled work with limited public contact. AR 71, 84, 117. The ALJ did not explain why he concluded their opinions were only "somewhat" persuasive, other than stating that "the record" supported a finding of more restrictive limitations in Plaintiff's RFC than those suggested by the consultants' opinions. AR 23.

Plaintiff argues that the ALJ's RFC does not meet the substantial evidence standard because it is not supported by a medical source, and because the ALJ did not rely on substantial evidence to find that the opinions of Dr. Glassman and Dr. Phan were not persuasive. The Court will address each of Plaintiff's arguments in turn.

## A. Sources of Information to Support the RFC

Plaintiff contends that the RFC does not satisfy the substantial evidence standard because it is not supported by a medical source. The ALJ largely rejected the opinions of Dr. Glassman and Dr. Phan as not persuasive, and only found the state agency consultants' opinions somewhat persuasive. Plaintiff argues that state agency consultants' opinions cannot constitute substantial evidence because a reasonable person would not rely on them, and they include a review of notes from a consultative examination in October 2018 that are not part of the record. According to Plaintiff, this leaves only the "raw medical data" to support the RFC, which Plaintiff contends the ALJ is not qualified to interpret.

Defendant counters that the determination of RFC is an administrative decision, not a medical decision, and an ALJ is not required to rely on a medical opinion to support the RFC. The Court agrees generally with Defendant that an ALJ can rely on the opinions of non-treating state agency consulting physicians to support an RFC determination. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *1 n.1 (S.S.A. July 2, 1996); *see also* 20 C.F.R. §§ 404.1502, 404.1513a, 404.1520c. This is true even though the ALJ here determined the RFC should be more restrictive than the state agency consulting physicians' opinion. *Donna M. v. Saul*, No. ED CV 18-2554-SP, 2020 WL 1550212, at *5 (C.D. Cal.

Mar. 31, 2020) ("An ALJ must consider opinions from medical sources, but is not required to adopt verbatim a medical opinion because the RFC determination is ultimately reserved to the Commissioner").

In determining RFC, an ALJ is permitted to rely on medical evidence that has not been formally interpreted by a physician in a medical opinion. SSA regulations regarding the RFC determination provide:

> We will assess your residual functional capacity **based on all of the relevant medical and other evidence**. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

20 C.F.R. § 404.1545(a)(3) (internal citations omitted) (emphasis added). *See also* SSR 16-3p, 2017 WL 5180304, at *12 ("We consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record"); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (explaining that "[d]isability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings" and that an ALJ may also consider a claimant's "general appearance" and "testimony at the hearing"). An ALJ is not only permitted but required to consider the information contained in medical records, beyond the medical opinions themselves, when crafting a claimant's RFC.

Plaintiff's reliance on *Padilla v. Astrue* for the proposition that "as a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms'" is misplaced. 541 F. Supp. 2d at 1106 (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) and citing *Day*, 522 F.2d at 1156). *Padilla* concerns whether an ALJ is qualified --

3:20-cv-01759-AHG

at step two of the sequential evaluation process -- to determine whether a claimant lacks a medically severe impairment or combination of impairments. *Padilla*, 541 F. Supp. 2d at 1106. A finding at step two, however, is judged by a different evidentiary standard. A step two finding must be "clearly established by medical evidence," not simply supported by substantial evidence. *Id.* (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)).

The Court therefore rejects Plaintiff's argument that the RFC is not supported by substantial evidence solely because it relies on the state agency consultative physicians, requires the ALJ to interpret raw data, or is not supported by a specific medical opinion. Nonetheless, the question of whether the RFC satisfies the substantial evidence standard depends on Plaintiff's remaining arguments regarding the ALJ's treatment of certain medical opinions as not persuasive.[3]

## B. Assessment of Dr. Glassman and Dr. Phan's Opinions

Dr. Glassman was retained by the Agency to perform a consultative examination of Plaintiff. AR 414. Dr. Phan was Plaintiff's treating physician. AR 423. The ALJ assessed that Dr. Glassman's opinion was not persuasive to the extent that Dr. Glassman found that Plaintiff had marked impairments in social functioning and in ability to maintain concentration, persistence, and pace. AR 22-23. The ALJ assessed that Dr. Phan's opinion was not persuasive at all. AR 23.

The ALJ provided the same reasons for rejecting both opinions. AR 22-23. His reasons for rejecting Dr. Glassman's finding of marked limitation and Dr. Phan's finding of extreme limitation in social functioning were that "the longitudinal record reveals that

---

[3] In the Reply section of the Joint Motion, Plaintiff states that he does not contend "that the ALJ did not weigh the medical opinions correctly, nor that [Plaintiff's] application for disability pertained to the date whether the prior regulations the Commissioner explained in her contentions were applicable." ECF No. 22 at 25. The Court interprets this to mean that Plaintiff is not arguing that the ALJ failed to follow the now-obsolete treating physician rule when analyzing the opinion evidence. Plaintiff's remaining arguments essentially contend that the reasons the ALJ provided for treating Dr. Glassman and Dr. Phan's opinions as not persuasive are not supported by substantial evidence.

[Plaintiff] was generally cleanly and casually dressed with good hygiene," that despite his "limited eye contact, he was generally cooperative and pleasant with normal speech[,]" that he "had age appropriate/normal motor activity[,]" and that he "has friends with whom he spends time[], and he has had a girlfriend at one point." AR 22, 23. The ALJ's reasons for rejecting both doctors' findings of marked limitation in the area of concentration, persistence, and pace was that Plaintiff "was alert and oriented[,]" that he "did serial 3's without error, and a money-changing problem correctly[,]" that he had "coherent thought process and normal thought content" and that he "drove to San Francisco on his own and resided there for three months. While there, he worked as a dog walker and managed his own earnings." AR 22-23.

Plaintiff argues that the ALJ's reasons are not logical, rational, or supported by substantial evidence. Plaintiff takes issue with the ALJ's reliance on portions of the record that indicate Plaintiff made eye contact, was well-groomed, and had a pleasant demeanor at several of his medical appointments, pointing to evidence that he was malodorous during Dr. Glassman's evaluation, testified that he struggles with maintaining good hygiene due to depression, and was found to have an "odd" and "Autistic manner of relating" by Dr. Glassman. Plaintiff contends that the ALJ placed too much emphasis on Plaintiff's friendships, romantic relationships, and brief periods of living alone as evidence that is inconsistent with Dr. Glassman's and Dr. Phan's opinions regarding Plaintiff's marked to severe limitations in social functioning. ECF No. 22 at 8-12.

Defendant contends that there is no reversible error in the ALJ's evaluation of the persuasiveness of these opinions. Defendant argues that even though Plaintiff was poorly groomed at his examination by Dr. Glassman, the overall record reflects that Plaintiff was well-groomed and dressed appropriately. Similarly, Defendant contends that although Dr. Glassman found Plaintiff's behavior and manner of relating to be "odd," medical providers in other treatment notes describe Plaintiff as cooperative and pleasant. Defendant points out that although Plaintiff's mental status examinations evidenced significant issues with his mental functioning, they also included normal findings with respect to cognitive

functioning. Defendant also contends that the ALJ's finding that Plaintiff's ability to work as a dog walker, manage his finances, and live independently conflicted with Dr. Glassman and Dr. Phan's opinions was reasonable and does not constitute error. *Id.* at 23-25.

The Court agrees with Plaintiff that the ALJ's evaluation of the persuasiveness of Dr. Glassman and Dr. Phan's opinions is not supported by substantial evidence. Dr. Glassman made the following observations about Plaintiff:

> He was very poorly-engaged with the examiner. He did not make any eye contact. There was a marked lack of capacity for social reciprocity, and he had a clear Autistic manner of relating. His affected [sic] and relatedness was odd. ... His responses were odd, "off," and elliptical, but he did not appear to have a formal Schizophrenic Thought Disorder. ... He had some significant difficulty following instructions, due to his odd and elliptical responses.

AR 421. Dr. Glassman noted that Plaintiff was "dirty, unkempt, malodorous" and that "[h]e made no eye contact." AR 421. Dr. Glassman found that Plaintiff "has been unable to manage his life as an adult. He has been essentially homeless, living in his camper van, working occasionally doing dog walking. He is essentially living a transient, isolated, homeless lifestyle." AR 421.

Dr. Phan submitted a treating source statement in connection with Plaintiff's application for benefits, in which he noted Plaintiff's diagnoses of major depressive disorder, persistent depressive disorder, generalized anxiety disorder, and being on the autism spectrum. AR 423. He identified symptoms of pervasive loss of interest in almost all activities, feelings of guilt or worthlessness, generalized persistent anxiety, emotional withdrawal or isolation, difficulty thinking or concentrating, thoughts of suicide, and mood disturbance, and noted that Plaintiff "struggles with social anxiety and challenges attending to details." AR 423. Dr. Phan opined that Plaintiff had moderate limitations in daily living activities, extreme limitations in social functioning, and marked limitations in maintaining concentration, persistence or pace. AR 423.

The ALJ found that these opinions were not consistent with treatment notes in the record that indicate Plaintiff came to appointments well-groomed and was described as

pleasant and cooperative. AR 22-23 (citing to AR 310-99 and 424-40). The majority of the treatment notes from the approximately 100 pages of the record that the ALJ cites do not describe whether Plaintiff was well-groomed, cleanly dressed, had good hygiene, or was cooperative and pleasant. Although there are a handful of treatment notes that describe Plaintiff as cooperative, cleanly dressed, appropriately groomed, or pleasant, *see* AR 332, 343, 352, 360, 364, 366, 368, 377, 382, 387, 396, 398, 424, 436, it is not rational to interpret those notes as inconsistent with Dr. Glassman's observations regarding the impact of Plaintiff's autism on his manner of relating to others. Nor is it "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels*, 874 F.3d at 654. Those treatment notes are largely from appointments where Plaintiff was accompanied by and had the support of his mother, while he was "dirty, unkempt, malodorous," wearing dirty clothing, unshaven, and had "unwashed, uncombed, unkept" hair at the appointment he attended alone with Dr. Glassman. AR 301, 302, 330, 343, 354, 421. Additionally, many of the same records on which the ALJ relied to note that Plaintiff was cooperative, cleanly dressed, appropriately groomed, or pleasant, also noted that Plaintiff exhibited poor eye contact (AR 343, 368, 382), restricted affect (AR 352, 368, 377, 382, 387), slow rather than normal speech (AR 352, 377, 387), deficits in social-emotional reciprocity, deficits in nonverbal communication, and hyperactivity to sensory input (AR 354), stiff posture and anxious mood (AR 364, 383, 398).

The record is replete with information regarding the social challenges Plaintiff has relating to others and in his past work. *E.g.*, AR 302 (notes from an appointment with Dr. Sherkat in October 2017 stating that Plaintiff "is isolating himself and is not interacting with others due to his depression[,] tries to make eye contact with people and engage but that makes him very tired[,]" that he "has a lot of anxiety mostly with being around people" and that his ex-girlfriend got a restraining order against him to stop him from continuing to contact her); 343 (noting that Plaintiff gets "panicky" in social situations, "such as when he worked at a cash register[,]" that he struggled with being overwhelmed by anxiety symptoms when waiting tables due to "being around all those people[,]" that he

16

experiences anxiety every day, especially in social situations, feels overwhelmed and overstimulated in social settings, and that two different ex-girlfriends got restraining orders against him); 344 (noting that Plaintiff was let go from three jobs due to social anxiety symptoms and challenges attending to details). Progress notes from an appointment with Dr. Phan on October 4, 2018 reflect that Plaintiff "[t]ends to speak in abstract terms. Does not like to make eye contact for fear of confrontation" and "[t]ends to stay distant from others and has signif[icant] barriers to relationship." AR 357. Dr. Phan also noted during that appointment that Plaintiff had "moderate body odor," "little eye contact," and was "[g]oal-directed but tends to use abstract words that seem rather removed." AR 357. Other treatment notes show that his mother reported he had difficulty in school as a child because he "didn't get the social cues" and he similarly reported difficulty empathizing with people, and that he "has always felt out of place, and depressed that he cannot seem to fit in." AR 344, 419.

More importantly, even assuming Plaintiff has the ability to maintain good hygiene and grooming habits, that ability falls under the umbrella of the "adapting or managing oneself," not the area of interacting with others. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part-A2, 11.00E. The Agency explains in the Listings that the area of mental functioning of adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting" and gives examples including "maintaining personal hygiene and attire appropriate to a work setting[.]" *Id.* In contrast, the Agency explains that the area of interacting with others refers to the abilities "to relate to and work with supervisors, co-workers, and the public[,]" and gives examples including "handling conflicts with others, initiating or sustaining conversation, [and] understanding and responding to social cues. . . ." Therefore, the evidence on which the ALJ relies regarding Plaintiff's clean dress and good hygiene at some appointments does not amount to substantial evidence to find unpersuasive Dr. Glassman's opinion that Plaintiff is markedly limited in social functioning or Dr. Phan's opinion that Plaintiff has an extreme limitation in social functioning.

The ALJ also found that Dr. Glassman and Dr. Phan's opinions were not consistent with the record evidence regarding Plaintiff's social abilities, as reflected by his friendships and his romantic relationships. However, the Court finds that the ALJ mischaracterizes the record by relying on evidence of Plaintiff's personal relationships to reject a finding of marked or extreme limitation in the area of social functioning. Although the record shows that Plaintiff has some friends, he only identified one friend with whom he had a "solid friendship" and whom he relied on for support. AR 372. Plaintiff's testimony at the hearing was that he has very few close friends. AR 50. Although Plaintiff has had romantic relationships, two of his girlfriends obtained restraining orders against him. AR 302, 343. Therefore, although Defendant argues that the ALJ "relied on evidence concerning a girlfriend who Plaintiff subsequently dated for almost two years, not the one who sought a restraining order[,]" the Court nonetheless finds that evidence of having a girlfriend is not sufficient for a reasonable mind to accept that Plaintiff did not have marked or extreme limitations in social functioning, given that two of his ex-girlfriends sought restraining orders against him after their relationships ended. *See* ECF No. 22 at 24. As explained, the record shows that Plaintiff has struggled with social interaction from a young age and that his relationships have largely been unsuccessful.

More importantly, having friends and romantic relationships does not bear directly on the ability to "relate to and work with supervisors, co-workers, and the public," which is how the regulations define the "interacting with others" area of mental functioning. Dr. Glassman opined that Plaintiff had a marked limitation in interacting with others, meaning that Plaintiff's ability to relate to and work with supervisors, co-workers, and the public "independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 11.00F.2.d. Dr. Phan opined that Plaintiff had an extreme limitation in interacting with others, meaning that Plaintiff has no ability to relate to and work with supervisors, co-workers, and the public independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 11.00F.2.e. Despite rejecting these opinions as unpersuasive and finding Plaintiff's limitation in this

area to be only moderate—meaning Plaintiff's functioning in this area is "fair"—the ALJ nonetheless determined in Plaintiff's RFC that Plaintiff should have "no interaction with the general public and only occasional work-related, non-personal, non-social interaction with coworkers and supervisors." AR 19. Considering that the RFC is "the most" that a claimant "can still do despite [his] limitations," it appears that the ALJ ultimately agreed that Plaintiff has a marked limitation in the area of interacting with others, i.e., that he is at least seriously limited in this area, given the highly restrictive limitations he incorporated into the RFC. 20 C.F.R. § 404.1545(a)(1). The Court is unable to reconcile that determination with the ALJ's rationale for finding Dr. Glassman and Dr. Phan's opinions regarding Plaintiff's degree of limitation in social functioning to be unpersuasive. Therefore, the ALJ's reliance on Plaintiff's purported social successes in having friends and romantic relationships also does not constitute substantial evidence to find Dr. Glassman and Dr. Phan's opinions unpersuasive.

For these reasons, the Court finds the ALJ did not support his finding that Plaintiff had only a moderate limitation in social functioning with substantial evidence.

Turning to Plaintiff's degree of limitation in the area of concentration, persistence, and pace, the ALJ also found that Dr. Glassman and Dr. Phan's opinion that Plaintiff has a marked limitation in this area was not consistent with evidence in the record indicating that Plaintiff can perform cognitive tasks like serial 3's and a money-changing problem, and that he has a coherent thought process and normal thought content. AR 22-23. Therefore, the ALJ concluded Plaintiff had only a moderate limitation in this area. AR 18. However, these cognitive abilities are not reflective of Plaintiff's ability to concentrate, persist, or maintain pace. As explained by the Agency's regulations:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and

regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. § Pt. 404, Subpt. P, App'x 1 11.00E.3. Although a test of serial 3's and a money-changing problem may show an ability to concentrate in the short term, these abilities better reflect Plaintiff's ability to understand, remember, or apply information, which the regulations explain include the abilities "to learn, recall, and use information to perform work activities." 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 11.00E.1. The regulations specifically give the examples of "understanding and learning terms, instructions, procedures" "following one-or two-step oral instructions to carry out a task," "identifying and solving problems," and "sequencing multi-step activities." *Id.* There is no question that the record evidence supports a finding that Plaintiff has above-average intelligence and no deficits in cognitive functioning. However, this evidence is not sufficient to find that Plaintiff has less than a marked limitation in the ability to *sustain* concentration over a workday or a longer period of time, as is needed to "complet[e] tasks in a timely manner" and to "sustain[] an ordinary routine and regular attendance at work[.]" 20 C.F.R. § Pt. 404, Subpt. P, App'x 1 11.00E.3.

To further support his finding that Dr. Glassman and Dr. Phan's opinions that Plaintiff is markedly limited in the area of concentration, persistence, and pace are inconsistent with the record, the ALJ relied on evidence that Plaintiff lived in San Francisco on his own for three months, supporting himself through dog walking jobs. AR 22, 23. The ALJ's view that Plaintiff's three-month stay in San Francisco was a successful venture that demonstrated his self-sufficiency is also not a rational interpretation of the record. Plaintiff was living in a van, working only part-time on intermittent dog walking jobs, and returned to San Diego after just three months because it was not sustainable to live in a van in the San Francisco climate. AR 37. If anything, this evidence serves to support Dr. Glassman's finding that Plaintiff "has been unable to manage his life as an adult" because he "has been essentially homeless, living in his camper van, working occasionally doing dog walking." AR 421. Dr. Phan's treatment notes similarly reflect that, when screened for manic

symptoms, Plaintiff reported "a burst of energy where he will experience increase in goal directed activities and impulsivity (such as buying a 'live in van')[.]" AR 343. Therefore, the evidence of Plaintiff's failed dog-walking stint in San Francisco does not show that Plaintiff is not markedly limited in his ability to maintain concentration, persistence, and pace—to the contrary, it supports Dr. Glassman and Dr. Phan's opinions in that regard, showing that Plaintiff did not consider that living in his van would not be feasible in the winter months and made an impulsive move that he could not manage or afford to sustain. And even if it were rational to interpret Plaintiff's poorly planned and brief move to San Francisco as evidence of abilities in this area of functioning, selectively focusing on a single three-month period cannot serve as substantial evidence to support the ALJ's RFC finding. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

For these reasons, the evidence that the ALJ relied on to find the medical opinions of Dr. Glassman and Dr. Phan to be unpersuasive with respect to Plaintiff's degree of limitation in the areas of social functioning and concentration, persistence, or pace is not legally sufficient under the substantial evidence standard, because it does not amount to such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. *Revels*, 874 F.3d at 654. Dr. Glassman and Dr. Phan's opinions that Plaintiff has a marked or extreme limitation in the area of social functioning and a marked limitation in the area of concentration, persistence, or pace are largely consistent with each other and the record as a whole, and the ALJ erred by failing to cite substantial evidence in support of his conclusions that their opinions were not consistent with the record.

## V.  **THE APPROPRIATE REMEDY**

The ALJ's error was not harmless. At the hearing, the Vocational Expert testified that a person with the limitations found by Dr. Glassman and Dr. Phan would not be able

to sustain Plaintiff's past work or any other work. When Plaintiff's attorney asked the Vocational Expert about the limitations in Dr. Glassman's opinion, Ex. 6F, the Vocational Expert testified that Plaintiff could not perform the jobs the VE identified under the ALJ's RFC. AR 56. The Vocational Expert's conclusion would be the same applying Dr. Phan's opinion because Dr. Phan's opinion was more restrictive than Dr. Glassman's. AR 56. The Vocational Expert's testimony is consistent with the regulations, which explain that a person with marked limitations in two areas of mental functioning or an extreme limitation in one area of mental functioning would be found disabled at step three of the five-step sequential evaluation process, because their mental impairment(s) would satisfy the paragraph B criteria of Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders).[4] *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part-A2, 12.00A.2.c ("To satisfy the paragraph B criteria, your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning").

In light of the ALJ's error, the Court has discretion to either remand for further proceedings before the ALJ, or remand for an award of benefits. *Garrison*, 759 F.3d at 1019. Under the "credit-as-true" rule, a case may be remanded for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. Each of these factors weighs in favor of a remand for an award of benefits in this case.

---

[4] These are the Listings the ALJ considered at step three when evaluating whether Plaintiff's mental impairments meet or medically equal the criteria of a Listing. AR 18.

The first factor weighs in favor of a remand for benefits. The record has been fully developed and includes Plaintiff's medical records, medical opinions from state agency physicians, Plaintiff's treating physician, and a consultative examiner. The second factor weighs in favor of a remand for benefits because, as discussed above, the ALJ failed to provide legally sufficient reasons for finding the medical opinions of Dr. Glassman and Dr. Phan to be unpersuasive. The third factor also weighs in favor of a remand for benefits because the Vocational Expert testified that Plaintiff would not be able to perform the other jobs she had identified in connection with the ALJ's hypothetical that ultimately matched the ALJ's RFC determination if the limitations found by either Dr. Glassman or Dr. Phan applied. Moreover, had the ALJ adopted their opinions as true, Plaintiff's mental impairments would have been found to meet a Listing at step three because the paragraph B criteria would have been satisfied by a finding of marked limitations in the two areas of social functioning and concentration, persistence, and pace, or by a finding of an extreme limitation in only one of those areas (as Dr. Phan opined with respect to Plaintiff's social functioning).

Therefore, weighing the applicable factors, the Court finds the appropriate remedy here is to reverse the Commissioner's decision and remand for an immediate award of benefits.

## VI.  CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), **IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for the calculation and award of benefits.

**IT IS SO ORDERED.**

Dated:  September 29, 2022

Honorable Allison H. Goddard
United States Magistrate Judge

23